IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SARI MARKS,

                Plaintiff,

v.

CITY OF HAYWARD,
JOHN McCUE,
WILLIAM SWINTKOWKSI
and JASON SPEROS,

                Defendants.

OPINION AND ORDER

13-cv-366-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil action for money damages in which plaintiff Sari Marks contends that defendants City of Hayward, John McCue, William Swintkowski and Jason Speros violated her constitutional right to due process when they terminated her city employment under the guise of a layoff and did not give her an opportunity for a pretermination hearing. Defendants say it is unnecessary to decide whether plaintiff was terminated or laid off because even if plaintiff is right about having been terminated rather than laid off, she had no constitutional right to a hearing.

      The case is before the court on plaintiff's motion for summary judgment, but defendants established in their brief in opposition to the motion that plaintiff does not have a property interest in her job that would entitle her to a pretermination hearing. For this reason, their request to have the court enter summary judgment in their favor will be

1

granted.

From the findings of fact proposed by the parties, I find that the following are relevant and undisputed.

UNDISPUTED FACTS

In 2005, plaintiff Sari Marks began working as a Public Works Assistant for defendant City of Hayward as an unrepresented, regular, hourly, full time employee. At all relevant times, defendant John McCue was the director of Public Works for the city; defendant William Swintkowski was Mayor; and defendant Jason Speros was an alderperson, a member of the Hayward City Council and Chair of the Public Works Committee.

On November 17, 2010, the defendant city adopted an "Agreement between Unrepresented Regular, Hourly Full Time Employees and the City of Hayward, Wisconsin," to take effect on January 1, 2011 and run through December 31, 2011. Dkt. #9-2. This agreement contained a provision recognizing the employer's authority to initiate disciplinary action against employees, provided such disciplinary action was for just cause. Dkt. #9-1, 9-2. It was signed by the mayor on behalf of defendant City and by the chair of the city's Personnel Committee. It is also signed by employees, including plaintiff.

In July 2011, Wisconsin enacted Wis. Stat. § 66.0509, which allowed cities and other municipalities the choice of either establishing a civil service system for all employees except police and firefighters or enacting a grievance system. In response to the enactment of this statute, the city's Personnel Committee drafted a new Grievance Policy that covered all city

2

employees, full-time, part-time and seasonal, with the exception of those employees covered by the city's contract with the police union. Dkt. #15-4. The Hayward Common Council adopted the new Grievance Policy on September 19, 2011. It defined an "employee termination" as including action taken by the employer to terminate an individual's employment for misconduct or performance reasons but as excluding a layoff, "voluntary quit," retirement, inability to work or failure to report for work. Dkt. #9-5 at 10, ¶ 2. Anyone terminated under this provision could file a grievance. Id. at 10-11. The new policy contained no "just cause" provision related to discipline. Instead, it provided that "The City of Hayward reserves the right, in its sole discretion, to impose disciplinary action as may be appropriate to the particular circumstances." Id. at 1.

In the fall of 2011, an agreement was drafted to take effect on January 1, 2012 and expire on December 31, 2013. A copy of this agreement filed by plaintiff, dkt. #9-5, reads on the title page: "As adopted revised October 20, 2011." It does not say who drafted it or who adopted it. The agreement makes some changes from the agreement in effect throughout 2011, but continues to recognize the authority of the employer to initiate disciplinary action against employees, provided such action is for good cause. Id. at 3, § 1. It also provides a mechanism for non-probationary employees to appeal any disciplinary action through a "grievance procedure," id. at § 2, which presumably means the grievance procedure set out on page 2 of the agreement, and it provides that in any lafoff, the least senior person in the department is to be the first laid off. Id. at 6. It bears no signatures on behalf of the defendant City or of the employees, although space is provided for doing so.

3

On October 20, 2011, the City's Personnel Committee formally recommended to the Common Council that the city's non-represented employees receive the same pay and benefit adjustments in 2012 and 2013 that the city had tentatively agreed to give the city's police union. On November 14, 2011, the Common Council formally approved the "2012-2013 Police Union Collective Bargaining Agreement" and considered and approved the Personnel Committee's recommendation that the non-represented employees receive the same percentage wage increase and benefit changes the city had negotiated with the police union. Dkt. #9-4. The minutes do not show that the Common Council considered or approved an employment agreement for unrepresented employees that would have been in effect for the year 2012. Id. Oddly enough, however, the document filed by plaintiff as the draft agreement for 2012-13 incorporates both the new wage schedule for the non-represented employees and the new Grievance Policy, as well as a "Collection of Employee Policies adopted by the Common Council." Dkt. #9-5 (attached).

On May 21, 2012, defendant McCue recommended to the Common Council's Personnel Committee that "the agreement between the City and the Unrepresented Regular, Hourly Full-Time Employees, as well as the policies adopted by the council over the years should be reviewed by an Attorney" because it had been "a couple of years since the agreement and the policies have been reviewed by an Attorney." Dkt. #24-1. A motion to that effect was made and approved.

On two occasions, once in 2010 and once in 2012, defendant McCue confronted plaintiff about having falsified her timesheet. Another time, he put a note in her personnel

4

file because she had made clerical errors in the water and sewer inventory report. He also reprimanded her in April 2012 for making or receiving too many personal telephone calls at work.

On September 27, 2012, defendant McCue handed plaintiff a letter headed "Notice of Layoff," which read: "Due to restraints in the Public Works Department budget, your position as Public Works Confidential Secretary/Assistant, Certified Wastewater & Waterworks Operator will be eliminated effective October 12, 2012." Dkt. #9-7. Some time afterward, plaintiff wrote defendant McCue to ask about her layoff. He responded, citing budget problems, the needs of the department and the December 31, 2011 expiration of the agreement between the city and the unrepresented regular, hourly full time employees, among other reasons. Dkt. #9-10.

At the time plaintiff lost her job, plaintiff was not the least senior employee in the city's Public Works Department. Defendant McCue never presented plaintiff's letter of layoff to the Common Council or received the council's approval for a reorganization of his department. Plaintiff's position was never filled or reinstated.

OPINION

Plaintiff rests her case on the contention that she was terminated from her job and not laid off. From this, I assume that her allegations about not being the least senior person in the department and about defendant McCue's failure to obtain council approval for a reorganization of his office are included in her complaint simply to show that the layoff was

5

a smoke screen for what was really her termination. I understand that she is not contending that she should be reinstated because defendants did not follow the proper procedures for a layoff. Such a contention would raise only a state law claim, not one of federal constitutional dimensions.

To prevail on her claim that her termination from her governmental job was a due process violation requiring a pretermination hearing, plaintiff must show that she (1) had a constitutionally protected property interest in her job; (2) she suffered a loss of that interest amounting to a deprivation; and (3) the deprivation occurred without due process of law. Kiddy-Brown v. Blagojevich, 408 F.3d 346, 360 (7th Cir. 2005). The first showing requires plaintiff to prove she had "'a legitimate claim of entitlement'" to her job, amounting to a property interest. Id. (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). Such a property interest must arise from an independent source, which could be a state statute, Roth, 408 U.S. at 577, a "regulation, municipal ordinance or an express or implied contract." Border v. City of Crystal Lake, 75 F.3d 270, 274 (7th Cir. 1996).

State law determines whether an employee has a property interest in her job. Id. at 273. Under Wisconsin law, employment at will is the rule, even for public workers. Vorvald v. School District of River Falls, 167 Wis. 2d 549, 557, 482 N.W.2d 93, 96 (1992) ("Absent civil service regulations or laws, or a contract or collective bargaining agreement, a municipal employee is an employee at will and has no property interest in employment.") An exception exists for public employees give tenure by operation of civil service regulations or laws, Oddsen v. Board of Fire & Police Commissioners, 208 Wis. 2d 143, 159, 321 N.W.2d 161

(1982), but plaintiff does not rely on any such regulations or laws. Rather, she contends that the source of her property right is the agreement drafted in the fall of 2011 to govern city employees in the calendar years 2012-13. Although defendants maintain that this agreement was never adopted by the Common Council, plaintiff believes that it is binding on the city, for four reasons.

First, plaintiff cites her affidavit in which she avers that on October 2, 2012, shortly after she was terminated, she asked Clerk-Treasurer Linda Gunther for a copy of the "current and active employment agreement" covering her position and was given a copy of the agreement drafted in 2011 to take effect in 2012-13. (She also maintains that it was the City's custom and practice to be bound by the preceding year's agreement in any year in which the City does not approve a new agreement, but she has no evidence for this other than her own statement.)

Second, plaintiff relies on the affidavit of Diana Lewis, another employee of the City, who avers that Gunther and defendant McCue told Lewis immediately after the November 14, 2011 Common Council meeting that the council had approved the agreement that was to take effect in 2012. Lewis Aff., dkt. #23, ¶ 12. Third, plaintiff cites the "2011Agreement" she submitted, which incorporates the new Grievance Policy and the new wage rates. Fourth, she points to defendant McCue's 2012 motion to have the agreement between the City and the unrepresented employees reviewed by outside counsel, suggesting that McCue and the other members of the Personnel Committee did not the consider the "2011 Agreement" a dead letter.

7

It is not necessary to decide whether plaintiff is correct when she argues that the agreement drafted in 2011 was approved by the City (despite the absence of any indication in the council minutes that the council ever considered the agreement, let alone approved it, and the omission of any signatures of city representatives and employees). Even if the agreement was approved and in effect in 2012, it does not support plaintiff's claim of entitlement to a pretermination hearing because it conflicts directly with the provisions of the new Grievance Policy.

The purported agreement for 2012-13 and the new Grievance Policy do not evince a mutual understanding among the parties that the City cannot terminate any City employee without "just cause." What the agreement grants to employees, the Grievance Policy takes away. Not only does the policy reserve to defendant City the right to impose disciplinary action in its sole discretion, but it makes no mention of just cause.

At the least, an employee claiming a property interest in her job must show that both she and her employer had agreed to be bound by the terms of their agreement and that those terms can be discerned from the written document, whatever form it takes. In Ferraro v. Koeslch, 124 Wis. 2d 154, 158-59, 366 N.W.2d 666, 669 (1985), for example, the state supreme court found that an express contract had been created by the employer's representations and offers of an employee handbook and the employee's specific acceptance of them as a condition of further employment. In this case, in which the various writings are in conflict, it is not possible to say that an express contract was in existence when plaintiff was terminated or that the City had made binding representations or offers or that plaintiff

8

had accepted the representations and offers of further employment.  One document (the purported agreement for 2012-13), limited the defendants by conditioning the initiation of disciplinary action on just cause, dkt. #9-5 at 5, 3, and does not show that the document was agreed to by the employer and employee, although they were provided a place to sign.  Id. at 12.  The second document (the new Grievance Policy), did not limit the defendant City to just cause for initiating disciplinary action, including termination, but reserved to the City the right to impose disciplinary action "in its sole discretion" and, in place of signatures, included a statement on the first page that the policy was adopted by the Personnel Committee and the Common Council on September 19, 2011.  Id. at 24.

"[A]n employment manual may alter an at-will employment relationship only if the manual contains express provisions from which it reasonably could be inferred that the parties intended to bind each other to a different relationship."  Bantz v. Montgomery Estates, Inc., 163 Wis. 2d 973, 979, 473 N.W.2d 506, 508 (Ct. App. 1991) (citing Ferraro, 124 Wis. 2d at 168, 368 N.W.2d at 673).  No one reading the internally inconsistent provisions of the defendant City's agreement for 2012-13 and the City's new Grievance Policy could reasonably believe that it established a binding employment relationship that gave plaintiff a property interest in her job in 2012.

It is plaintiff's burden to show that she had such a property interest in her position in the Public Works Department for the City of Hayward.  She has failed to meet her burden, whereas defendants have shown convincingly that she should cannot do so. Moreover, the confusing state of the City's employment rules supports defendants' argument

that they are entitled to qualified immunity for any part they played in plaintiff's termination from her position in the Public Works Department. (Defendants Speros and Swintkowski deny that they played any part.) The law at the time of the firing was not "clear in relation to the specific facts facing the public [official's actions] when [they] acted." Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988) (en banc). Under the particular circumstances, defendant McCue's actions were objectively reasonable and to the extent that defendants Speros and Swintkowski acted in support of McCue, their actions were equally reasonable.

Accordingly, I will deny plaintiff's motion for summary judgment and grant defendants' request for summary judgment.

This decision makes it unnecessary to decide defendants' requests for summary judgment on any other grounds, such as lack of personal involvement or lack of an official policy for which the City and the individual defendants can be held liable in their official capacities under Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978).

ORDER

IT IS ORDERED that the motion for summary judgment, dkt. #8, filed by plaintiff Sari Marks is DENIED and the request for summary judgment made by defendants City of Hayward, John McCue, William Swintkowski and Jason Speros in their brief in opposition to plaintiff's motion, dkt. #19, is GRANTED. The clerk of court is directed to enter

judgment in favor of defendants and close this case.

Entered this 16th day of April, 2014.

                                                BY THE COURT:
                                                /s/
                                                BARBARA B. CRABB
                                                District Judge